IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOLPHUS OTIS FUDGE, | No. 3:20-CV-02112 |
| Plaintiff, | (Chief Judge Brann) |
| v. | |
| ROBERT MARSH, *et al.*, | |
| Defendants. | |

MEMORANDUM OPINION

FEBRUARY 18, 2022

I.   BACKGROUND

Plaintiff, Dolphus Otis Fudge ("Fudge"), a state inmate formerly incarcerated at the Benner Township State Correctional Institution, ("SCI-Benner Township"), Bellefonte, Pennsylvania,[1] commenced this civil rights action pursuant to 42 U.S.C. § 1983, on November 12, 2020, naming as Defendants the following SCI-Benner Township employees:  Superintendent Robert Marsh ("Marsh"); Dr. Jeffrey Boland ("Boland"); Dr. Kevin Kollman[2] ("Kollman"); CRNP Kelly Eyer ("Eyer"); 1st Shift Shift Commander, John Doe(s), Sgt. And Lts.

---

[1] Plaintiff is currently housed at the Create House, 1920 E. Market Street, Bethlehem, Pennsylvania.
[2] Plaintiff identifies this Defendant in his complaint as Dr. Kevin Coleman. Defendants' motion to dismiss reflects this Defendant's surname as Kollman. Thus, the Clerk of Court will be directed to amend the caption of the complaint to reflect Dr. Kevin Kollman as the correct Defendant.

Working John Doe(s), John Doe(s) and Corrections Officers.[3]

On March 25, 2021, Defendants Kollman and Eyer moved pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss Fudge's complaint and on March 29, 2021, Defendants Boland, Marsh, and 1st Shift Commander likewise moved for dismissal. The motions are fully briefed and are ripe for disposition. For the reasons set forth below, Defendants' motions will be granted.[4]

## II. ALLEGATIONS IN COMPLAINT

On May 21, 2019, SCI-Benner Township was on a lockdown and was being searched for contraband.[5] Plaintiff had been "given an increase in [his] normal medication and as a result while [he] was handcuffed for the prison search, [he] became extremely dizzy and fell unable to control the fall [he] broke [his] leg."[6] He states that "[t]he John Doe CO's that were involved with [his] cell search helped [him] off the ground and sat [him] on a table till medical arrived."[7]

---

[3] Doc. 1.
[4] The remaining John Doe Defendants will be dismissed, as they have never been identified by Plaintiff and the deadlines for discovery and amendment of pleadings have expired. *See, e.g., Graham-Smith v. City of Wilkes-Barre*, No. 3:17-CV-00239, 2020 WL 9607112, at *5 (M.D. Pa. Feb. 26, 2020) ("[I]f a plaintiff fails to amend a complaint to identify unnamed John Doe defendants, a court may *sua sponte* dismiss those defendants prior to ruling on a summary judgment motion.") (citing *King v. Mansfield Univ. of Pa.*, No. 1:11-CV-01112, 2014 WL 4546524, at *10 (M.D. Pa. Sept. 12, 2014)), *report and recommendation adopted*, No. 3:17-CV-00239, 2021 WL 2020591, at *11 (M.D. Pa. May 19, 2021); *Millbrook v. United States*, 8 F. Supp. 3d 601, 609 (M.D. Pa. Mar. 25, 2014) ("John/Jane Doe defendants may only be allowed 'to stand in for the alleged real parties until discovery permits the intended defendants to be installed.'") (quoting *Johnson v. City of Erie*, 834 F. Supp. 873, 878 (W.D. Pa. 1993)).
[5] Doc. 1.
[6] *Id*.
[7] *Id*.

"On May 22, 2019, x-rays were taken, and it was discovered that [Plaintiff] had a distal fibula fracture."[8] He claims that "a posterior short leg splint was applied to [his] right leg" and "Tylenol was ordered for pain."[9] Plaintiff states that on "June 2, 2019 or June 3, 2019," he "was seen by an orthopedic doctor at an outside hospital for surgery where screws and plates were used to repair the damage caused."[10]

Plaintiff files the instant action, seeking compensatory and punitive damages, claiming that all named Defendants violated his Eighth Amendment rights by acting deliberately indifferent to his serious medical needs.[11] In so doing, Plaintiff alleges: (1) he should have received the leg surgery to fix the fracture more expeditiously; (2) personnel denied him treatment because "of [his] inability to pay;" and (3) "Medical refused to move [him] to a lower bunk" after his fall and subsequent injury.[12] Plaintiff claims that he has raises these issues to final appeal through the administrative grievance process and all "were upheld and ultimately denied."[13]

---

[8]  *Id.*
[9]  *Id.*
[10] *Id.*
[11] *Id.*
[12] *Id.*
[13] *Id.*

### III.  RULE 12(b)6 STANDARDS OF REVIEW

In rendering a decision on a motion to dismiss, a court should not inquire "whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."[14] The court must accept as true the factual allegations in the complaint and draw all reasonable inferences from them in the light most favorable to the plaintiff.[15] A district court ruling on a motion to dismiss may consider the facts alleged on the face of the complaint, as well as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."[16]

However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."[17]

> Under the pleading regime established by [*Bell Atl. Corp. v.] Twombly*, 550 U.S. 544 (2007) and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps. First, it must "tak[e] note of the elements [the] plaintiff must plead to state a claim." *Iqbal*, 556 U.S. at 675, 129 S.Ct. 1937. Second, it should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679, 129 S.Ct. 1937. *See also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth." (citation and editorial marks omitted)). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should

---

[14]  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Nami v. Fauver*, 82 F.3d 63, 66 (3d Cir. 1996).
[15]  *Innis v. Wilson*, 334 F. App'x 454, 456 (3d Cir. 2009) (citing *Phillips v. Cnty of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008)).
[16]  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007).
[17]  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937.[18]

Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief.[19] At the second step, the Court identities those allegations that, being merely conclusory, are not entitled to the presumption of truth. *Twombly* and *Iqbal* distinguish between legal conclusions, which are discounted in the analysis, and allegations of historical fact, which are assumed to be true even if "unrealistic or nonsensical," "chimerical," or "extravagantly fanciful."[20] Deciding whether a claim is plausible is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense."[21]

## IV. ANALYSIS

Section 1983 of Title 42 of the United States Code offers private citizens a cause of action for violations of federal law by state officials.[22] The statute provides, in pertinent part, as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws,

---

[18] *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787–88 (3d Cir. 2016) (internal citations, quotations and footnote omitted).
[19] *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).
[20] *Id.* at 681.
[21] *Id.*
[22] *See* 42 U.S.C. § 1983

shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress....[23]

To state a claim under § 1983, a plaintiff must allege "the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."[24] Thus, §1983 limits liability to persons who violate constitutional rights.

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated."[25] In order to establish an Eighth Amendment medical claim, an inmate must allege acts or omissions by prison officials sufficiently harmful to evidence deliberate indifference to a serious medical need.[26] In the context of medical care, the relevant inquiry is whether the defendant was: (1) deliberately indifferent (the subjective component) to (2) the plaintiff's serious medical needs (the objective component).[27]

A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."[28] "[I]f unnecessary and wanton

---

[23] *Id.*; *see also Gonzaga Univ. v. Doe*, 536 U.S. 273, 284-85 (2002); *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).
[24] *West v. Atkins*, 487 U.S. 42, 48 (1988).
[25] *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).
[26] *See Spruill v. Gillis*, 372 F.3d 218, 235-36 (3d Cir. 2004); *Natale v. Camden Cty. Correctional Facility*, 318 F.3d 575, 582 (3d Cir. 2003).
[27] *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987); *West v. Keve*, 571 F.2d 158, 161 (3d Cir. 1979).
[28] *Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 347.

infliction of pain results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the Eighth Amendment."[29]

With respect to the subjective deliberate indifference component, the Supreme Court has established that the proper analysis for deliberate indifference is whether a prison official "acted or failed to act despite his knowledge of a substantial risk of serious harm."[30] A complaint that a physician or a medical department "has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment [as] medical malpractice does not become a constitutional violation merely because the victim is a prisoner."[31]

When a prisoner has actually been provided with medical treatment, one cannot always conclude that, if such treatment was inadequate, it was no more than mere negligence.[32] It is true, however, that if inadequate treatment results simply from an error in medical judgment, there is no constitutional violation.[33] However, where a failure or delay in providing prescribed treatment is deliberate and

---

[29] *Young v. Kazmerski*, 266 Fed. Appx. 191, 193 (3d Cir. 2008)(quoting *Monmouth Cty. Corr. Inst. Inmates*, 834 F.2d at 347).
[30] *Farmer v. Brennan*, 511 U.S. 825, 841 (1994).
[31] *Estelle*, 429 U.S. at 106.
[32] See *Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993).
[33] See id.

motivated by non-medical factors, a constitutional claim may be presented.[34] The United States Court of Appeals for the Third Circuit in *Durmer v. O'Carroll* added that a non-physician defendant cannot be considered deliberately indifferent for failing to respond to an inmate's medical complaints when the inmate is already receiving treatment by the prison's medical staff. However, where a failure or delay in providing prescribed treatment is deliberate and motivated by non-medical factors, a constitutional claim may be presented. [35]

    Plaintiff has failed to satisfy the deliberate indifference requirement of *Estelle v. Gamble*. Specifically, with the exception of Drs. Boland and Kollman and CRNP Eyer, all of the named Defendants are non-medical defendants. The complaint acknowledges that Fudge was treated by prison medical staff after the May 21, 2019 incident and there is no assertion that any of those Defendant officials delayed or denied any prescribed treatment. Accordingly, entry of dismissal in favor of the non-medical Defendants is appropriate with respect to the claim of deliberate indifference to Plaintiff's medical needs.

    As to the medical Defendants, Fudge's complaint is devoid of facts establishing that any of the named Defendants were deliberately indifferent to Plaintiff's medical needs. Recognizing this, Plaintiff attempts to bolster his

---

[34]   *See id.*; *Ordonez v. Yost*, 289 Fed. Appx. 553, 555 (3d Cir. 2008)("deliberate indifference is proven if necessary medical treatment is delayed for non-medical reasons.").
[35]   *See id.*

complaint by raising new factual allegations in his brief in opposition.[36] Specifically, Plaintiff alleges that "the bone was visibly sticking out,"[37] "the doctor who performed the surgery on Plaintiff indicated that, the handling of this matter was wrong[,]"[38] and "the broken bone had set."[39]  Although Fudge "cannot raise a new claim in [his] brief that [he] has not already pleaded,"[40] however, even if I were to consider these new allegations, the copy of Plaintiff's grievance appeals and responses,[41] attached as exhibits to his brief in opposition, clearly invalidate Plaintiff's new allegations, while lending further support that the Defendants were not deliberately indifferent to Plaintiff's medical needs.

Plaintiff's Grievance No. 803673, was responded to on June 12, 2019, with the following:

> I am in receipt of your Official Inmate Grievance dated 05/27/19, in which you state that on 5/21/19 SCI-Benner was on lock down. You state that you became dizzy while your cell was being searched and fell. You state that you recall medical personnel asking you how you were feeling. You state that they told you that you would be charged if you were treated and you declined to sign a sick call slip.
>
> I have reviewed your medical record and found that on 05/21/19 nursing staff responded to your cell for noted complaints of "I fell and twisted my foot."  It is noted that you refused a medical assessment and stated that you would put a sick call slip in if the symptoms got worse.

---

[36] Doc. 29.
[37] *Id.* at 3.
[38] *Id.* at 5.
[39] *Id.*
[40] *Jefferies v. Ameriquest Mortg. Co.*, 543 F. Supp. 2d 368, 385 (E.D. Pa. 2008) (citing *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 499 (3d Cir. 1997)).
[41] Indisputably authentic documents related to [the inmate's] grievances, may be considered "without converting [a motion to dismiss] to a motion for summary judgment," *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004),

9

> You were evaluated by nursing staff and CRNP Eyer on 05/22/19. An x-ray of your right ankle/foot was ordered and completed on this date. It was noted on the x-ray that you had a distal fibula fracture. It is noted that CRNP Eyer placed a posterior short leg splint [on] your right leg. You were ordered Tylenol as needed for pain. You were instructed to remain nonweight bearing and were educated about the fracture. You were scheduled to follow up with an Orthopedic specialist.
>
> In light of this information, your grievance is denied. You initially refused to be evaluated by nursing staff. You were then evaluated on 5/22/19 and followed up with accordingly.[42]

On June 27, 2019, Plaintiff filed an appeal to the Facility Manager in which he acknowledged that he "refused to sight the cash slip because it is well known if an inmate is taken to medical in a wheelchair, [he] will be charged $5.00" and he "couldn't afford the $5.00."[43]

By Appeal Response dated July 22, 2019, the Initial Grievance Response was upheld, finding that Plaintiff was advised by medical that he would be charged if he were treated, and he declined to sign a sick call slip.[44]

Plaintiff's own exhibits demonstrate that medical personnel immediately responded to Plaintiff in his cell after his fall. Plaintiff refused medical treatment at that time, stating he would put a sick call slip in if symptoms worsened.[45] Plaintiff then submitted a sick call request the following day. He was medically

---

[42] Doc. 29 at 10.
[43] Id. at 15.
[44] Id. at 16.
[45] The Court finds simply unbelievable Plaintiff's statement that the bone was visibly protruding; especially in light of Plaintiff's own statement that he "twisted his foot" and his refusal of medical treatment at the time of injury.

assessed, receiving an x-ray, a leg brace, and Tylenol, and was then scheduled to see an outside surgeon. To the extent that he would have preferred to have seen a surgeon sooner, Plaintiff's allegations demonstrate, at best, his disagreement with the type of treatment rendered. This is particularly so in light of the fact that there are no allegations in the complaint that any of the Defendants intentionally withheld medical treatment from Plaintiff in order to inflict pain or harm upon Plaintiff.[46]

In sum, Plaintiff's complaint amounts to nothing more than Plaintiff's subjective disagreement with the timing of treatment decisions, specifically, his appointment with an outside orthopedic surgeon. Where, as here, an inmate is provided with medical care and the dispute is over the adequacy of that care, an Eighth Amendment claim does not exist.[47]

Finally, with respect to Plaintiff's allegation that "medical refused to move [him] to a lower bunk,"[48] the action of denying an inmate a bottom bunk housing assignment, otherwise known as "bottom bunk status," may result in an Eighth Amendment violation where (1) the inmate has a serious medical need for bottom bunk status, and (2) prison officials are shown to be deliberately indifferent to that serious medical need.[49] Initially, Plaintiff has failed to allege facts necessary to

---

[46] *Farmer*, 511 U.S. at 837; *Rouse*, 12 F.3d at 197.
[47] *Nottingham v. Peoria*, 709 F. Supp. 542, 547 (M.D. Pa. 1988).
[48] Doc. 1 at 8.
[49] *Wall v. Bushman*, 639 F. App'x 92, 95 (3d Cir. 2015); *Saunders v. GEO Grp., Inc.*, 2019 WL 5558659, at *4 (E.D. Pa. Oct. 25, 2019) (quotation omitted); *Guilfoil v. Pierce*, 2009 WL

demonstrate that he had a serious medical need that would require medical personnel to re-assign him to a "bottom bunk status." However, even considering Plaintiff's medical condition as serious, Plaintiff's own allegations and exhibits are devoid of any request made by Plaintiff to be moved to a lower bunk and Defendants' refusal of same. Thus, Plaintiff has failed to satisfy the deliberate indifference requirement of *Wall v. Bushman*.

Generally, "plaintiffs who file complaints subject to dismissal . . . should receive leave to amend unless amendment would be inequitable or futile."[50] Although it seems unlikely that Plaintiff can remedy the defects in his compliant, the Court will nevertheless grant leave to amend in order to allow Plaintiff an opportunity to do so.

## V.   CONCLUSION

Based on the foregoing, Defendants' motions to dismiss Fudge's complaint will be granted, with leave to amend.

An appropriate Order follows.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

688957, at *5 (D. Del. Mar. 16, 2009) ("Refusal of prison officials to assign an inmate with a herniated disc to a bottom bunk may constitute deliberate indifference if the inmate's condition is sufficiently serious.")

[50] *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002)